Vedder Software Group Ltd. v. Insurance Services Office, Inc., et al

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18ᵗʰ day of October, two thousand thirteen.

PRESENT: DENNIS JACOBS,
        RALPH K. WINTER,
        CHESTER J. STRAUB,
                    **Circuit Judges**.

- - - - - - - - - - - - - - - - - - - -X
VEDDER SOFTWARE GROUP LTD.,
        **Plaintiff-Appellant**,

        **-v.-**                                     13-1267

INSURANCE SERVICES OFFICE, INC.,
XACTWARE, INC., LIBERTY MUTUAL HOLDING
COMPANY INC., LIBERTY MUTUAL INSURANCE
GROUP INC., LIBERTY MUTUAL INSURANCE
COMPANY, and LIBERTY MUTUAL FIRE
INSURANCE COMPANY,
        **Defendant-Appellees**,
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:                    DANIEL J. CENTI, Feeney, Centi and
                                  Mackey, Albany, New York.

**FOR APPELLEES:** JOEL M. COHEN (Gina Caruso, *on brief*), Davis Polk & Wardwell LLP, New York, New York, *for* Insurance Services Office, Inc. and Xactware, Inc.

KEVIN J. FEE (David T. McTaggart, *on brief*), Kornstein Veisz Wexler & Pollard, LLP, New York, New York, *for* Liberty Mutual Holding Company Inc., Liberty Mutual Group Inc., Liberty Mutual Insurance Company, and Liberty Mutual Fire Insurance Company.

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Vedder Software Group appeals from a judgment of the United States District Court for the Northern District of New York (Suddaby, <u>J.</u>), dismissing its antitrust and trademark infringement complaint. Vedder Software's product, the Estimating Wizard, provides estimates to the casualty insurance industry. Xactware, Inc. markets a competing software program, Xactimate. Xactware is wholly owned by Insurance Services Office, Inc., which in turn is wholly owned by Verisk Analytics, Inc., a publicly traded company owned in part by various insurance companies-- including the Liberty Mutual defendants. Vedder alleges various antitrust and trademark infringement claims arising from the defendants' ownership, required use, and design of Xactimate. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"We review <u>de novo</u> a district court's decision to dismiss a complaint for failure to state a claim pursuant to FRCP 12(b)(6). We must accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." <u>Patane v. Clark</u>, 508 F.3d 106, 111 (2d Cir. 2007) (internal citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 65 (2d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

1.  Conspiracy Claim Under Sherman Act § 1

Section 1 of the Sherman Act condemns "[e]very contract, combination . . ., or conspiracy, in restraint of trade or commerce . . . ." 15 U.S.C. § 1. "The crucial question in a Section 1 case is therefore whether the challenged conduct stem[s] from independent decision or from an agreement, tacit or express." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d. Cir. 2010)(internal quotation marks omitted). Vedder does not allege an express agreement among the defendant insurance companies, and instead relies on the insurers' parallel conduct.

"Although parallel business behavior is admissible circumstantial evidence from which the fact finder may infer agreement, it does not itself constitute a violation of the Sherman Act." Starr, 592 F.3d at 321 (internal quotation marks omitted). "[A]llegations of parallel conduct 'must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id. at 322 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Evidence is therefore required of additional circumstances, often called "plus factors." Mayor & City Council of Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 136 (2d Cir. 2013). "Plus factors" include: "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications." Id. Vedder relies on two facts: 1) the insurers' ownership interests in Verisk; and 2) their alleged demands requiring the use of Xactimate. These facts, accepted as true, do not plausibly plead a Sherman § 1 claim.

Vedder alleges that several large insurance companies, accounting for the "vast majority of insurance business in the United States," control Verisk--Xactware's ultimate parent corporation. (Am. Compl. ¶¶ 6, 7, 9, 11). However, the complaint identifies only Liberty Mutual and its affiliates as members of the conspiracy. No other insurance company is named. The insurers' alleged control over Verisk

3

is also a legal conclusion, which we do not accept as true. See Starr, 592 F.3d at 321 ("accepting all factual allegations as true, but giving no effect to legal conclusions couched as factual allegations") (internal quotation marks omitted).  The cases cited by Vedder support no more than that competitors acting in a trade association or joint venture are *capable* of conspiring.  See N. Tex. Specialty Physicians v. Fed. Trade Comm'n, 528 F.3d 346 (5th Cir. 2008); Daniel v. Am. Bd. of Emergency Med., 802 F. Supp. 912 (W.D.N.Y. 1992).  There is little doubt that competing insurance companies would not constitute a single entity for Sherman Act § 1 claims; but their common stake in Verisk is not conclusive of a conspiracy.

The insurers' alleged demand to require use of Xactimate fails to show an agreement because it does not "tend[] to exclude the possibility of independent action." Twombly, 550 U.S. at 555.  Such a demand would assure an insurance company and its vendors utilize compatible software to achieve consistency in estimates and ease in sharing data.  Thus, the alleged demand could be expected of an insurer acting independently from its competitors.  While Vedder argues this demand extended to work done for other insurers, this was not in the complaint, which alleges only the demand was to "obtain or retain" the business of the defendant insurers.  (Am. Comp. ¶ 18).

Vedder's complaint fails to establish an agreement between the defendant insurance companies.  Vedder does not make the "numerous very specific allegations" made in Starr, nor does it allege any of the "plus factors" this Court has found sufficient to support a conspiracy claim.  Mayor & City Council of Baltimore, 709 F.3d at 136-37.  Because the allegations only infer the "mere possibility of misconduct, . . . dismissal is appropriate."  Starr, 592 F.3d at 321.

2.   Trademark Infringement Claim

Section 43(a) of the Lanham Act provides a right of action against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1).  To prevail on a claim of trade dress infringement, a plaintiff must prove: 1) that the mark is

4

distinctive as to the source of the good; 2) a likelihood of confusion between its good and the defendant's; and, 3) that the trade dress is not functional.  See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115-16 (2d Cir. 2001). Distinctiveness requires a showing that the mark has "secondary meaning," so that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself."  Id. at 115.

Vedder's complaint asserts the Estimating Wizard has a "distinctive interface" of "non-functional elements" with a "secondary meaning."  (Am. Compl. ¶ 44).  The complaint also alleges the defendants' conduct is "likely to cause confusion or mistake" regarding the affiliation of Xactimate and the Estimating Wizard.  (Am. Compl. ¶ 48).  These bare assertions "amount to nothing more than a formulaic recitation of the elements" of a trademark infringement claim.  Iqbal, 556 U.S. at 681.  "As such, the allegations are conclusory and not entitled to be assumed true."  Id. While Vedder identifies numerous parts of the Estimating Wizard allegedly copied by the defendants, no factual allegations support its legal conclusions.  Thus, dismissal of the infringement claim was appropriate.

3.  Other Claims

Sherman Act § 2 states "[e]very person who shall monopolize, or combine or conspire with any other person or persons, to monopolize . . . shall be deemed guilty of a felony."  15 U.S.C. § 2.  A claim of monopolization may be based on either concerted or unilateral action.  See American Needle, Inc. v. National Football League, 560 U.S. 183, 130 S.Ct. 2201, 2208 (2010).  Vedder's monopolization claim, however, relates only to the defendants' alleged conspiracy.  (Am. Compl. ¶ 18)("Defendant Xactware has monopolized the market . . . by the defendants' conspiracy, agreement, and concerted action . . . .").  As discussed above, however, the complaint fails to adequately plead the existence of an agreement.  Thus, Vedder's Sherman Act § 2 claim cannot stand.

Vedder's other claims ultimately rest on the existence of a conspiracy or trademark infringement.  Because the complaint insufficiently pleads those claims, there is no need to examine them further.

For the foregoing reasons, and finding no merit in Vedder's other arguments, we hereby **AFFIRM** the judgment of the district court.

                                   FOR THE COURT:
                                   CATHERINE O'HAGAN WOLFE, CLERK